# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| JOSEPH MILLER<br>2338 N West Street<br>Lima, Ohio 45801<br><br>　　Plaintiff,<br><br>　　v.<br><br>PAUL ENGLE<br>INDIVIDUALLY AND AS CHAPLAIN,<br>AOCI<br>2338 N West Street<br>Lima, Ohio 45801<br><br>　　and<br><br>ED SHELDON<br>INDIVIDUALLY AND AS WARDEN, AOCI<br>2338 N West Street<br>Lima, Ohio 45801<br><br>　　and<br><br>MICHAEL DAVIS<br>INDIVIDUALLY AND AS RELIGIOUS<br>SERVICES ADMINISTRATOR, ODRC<br>4545 Fisher Road Suite D<br>Columbus, Ohio 43228<br><br>　　Defendants. | CASE NO.<br><br>Judge<br><br>**COMPLAINT FOR DECLARATORY<br>JUDGMENT, INJUNCTIVE AND OTHER<br>EQUITABLE & MONETARY RELIEF**<br><br>Dennis E. Sawan (#0090289)<br>Sawan & Sawan LLC<br>416 N. Erie St. Suite 200<br>Toledo, Ohio 43604<br>Tel (419) 900-0955<br>Fax (419) 900-0955<br>des@sawanandsawan.com |

　　Now comes Plaintiff, JOSEPH MILLER, by and through undersigned counsel, and for his

Complaint against Defendants PAUL ENGLE, ED SHELDON and MICHAEL DAVIS, in their

official capacities and individually, states and avers as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights complaint brought by Plaintiff JOSEPH MILLER against Defendants PAUL ENGLE, ED SHELDON and MICHAEL DAVIS in their various capacities as officials of the Ohio Department of Rehabilitation and Correction ("ODRC") at Allen-Oakwood Correctional Institution ("AOCI"). Plaintiff JOSEPH MILLER is a citizen of the United States of America and an inmate confined under the Jurisdiction of the Ohio Department of Rehabilitation and Corrections. Defendants have recognized Plaintiff's religious affiliation with the Sacred Name Sabbatarian ("SNS"), but have and are continuing to refuse to accommodate:

   a. Plaintiff's sincerely held religious belief that he must conform to certain dietary restrictions as found in the Torah and eat only kosher foods; and
   b. Plaintiff's sincerely held religious belief that he must observe Feasts and Holy Days found in the Torah; and
   c. Plaintiff's desire to observe SNS religious services in the Prison's worship facilities; and
   d. Plaintiff's right to peaceably assemble with other members of his faith to worship – including but not limited to - on the Seventh Day Sabbath and the feast days as found in the Torah.

## JURISDICTION AND VENUE

2. Plaintiff brings claims under both Federal and State law, seeking a temporary restraining order and a preliminary injunction prohibiting Defendants from refusing to accommodate his religious practices.

3. This action arises under the First and Fourteenth Amendments to the Constitution of the United States of America (U.S. Const. Amends. I and XIV), the Civil Rights Act, Title 42 of the United States Code, Section 1983 (42 U.S.C. § 1983), the Religious Land Use and Institutionalized Persons Act (42 U.S.C. §2000cc) and the Ohio Constitution.

4. This Court has jurisdiction over all claims by virtue of Title 28 of the United States Code, Sections 1331, 1343 and 1367 (28 U.S.C. §§ 1331, 1343 and 1367) and 42 U.S.C. §2000cc.

5. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C §§ 2201 and 2202, by Rule 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

6. Plaintiff's claims for damages are authorized under 42 U.S.C. § 1983, Ohio Law and by the general legal and equitable powers of this Court.

7. Venue is proper in this Court as all facts alleged in the Complaint occurred in Allen County, Ohio within the territorial jurisdiction of this Court.

**PARTIES**

8. Plaintiff, JOSEPH MILLER, is a citizen of the United States who is currently incarcerated in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC") at the Allen-Oakwood Correctional Institution ("AOCI") in Lima, Allen County, Ohio.

9. Defendant PAUL ENGLE is a chaplain at AOCI. He provides or otherwise supervises religious services to AOCI inmates. Defendant ENGLE has the authority to make recommendations as to what type of religious accommodations shall be made at AOCI.

10. Defendant ED SHELDON is the warden of AOCI. As warden, Defendant SHELDON is the managing office of AOCI. In this capacity, he supervises all AOCI departments, including religious services, and is the ultimate policy maker for AOCI. In matters of religious accommodations, Defendant SHELDON, after review of the recommendations of Defendant ENGLE, makes the final decision as to whether and what kind of religious accommodations shall be made at AOCI. Defendant SHELDON may accept, reject or modify any recommendation made by Defendant ENGLE.

11.    Defendant MICHAEL DAVIS is the Religious Services Administrator ("RSA") for the ODRC. His office is located at the ODRC Central Office in Columbus, Ohio. Defendant DAVIS handles inmate appeals pertaining to religious accommodations. Defendant DAVIS has the authority to order and compel Defendants ENGLE and SHELDON to grant religious accommodations they have previously denied to inmates, including the Plaintiff.

## THE SACRED NAME SABBATARIAN FAITH

12.    The Sacred Name Sabbatarian ("SNS") faith teaches and requires all members to believe and practice – absolutely and faithfully – the core beliefs of the religion, which include the following precepts:

   a. The SNS faith follows the Old and New Testaments of the Bible.

   b. Sacred Name Sabbatarians are required to observe the Sabbath every week from sundown on Friday until Sundown on Saturday.

   c. The Sabbath is observed by abstaining from work, school, and other secular activities during this time period.

   d. Sacred Name Sabbatarians also follow strict purity laws for food consumption, meaning that they only consume Kosher meals.

   e. In addition to the weekly Sabbath, the members of the Sacred Name Sabbatarians strictly follow all seven (7) annual Holy Days found in their Holy Scriptures.

   f. During these Holy Days, work is proscribed and additional dietary requirements are to be followed as outlined in section c above.

   g. Further, members of the Sacred Name Sabbatarians are required to have Holy Convocation with fellow members of their Faith on the Sabbath, Passover, and each of the seven annual Holy Days.

## FACTUAL ALLEGATIONS

13. Plaintiff has been incarcerated at AOCI since approximately July 9th, 2019.

14. Plaintiff identifies himself as a member of the SNS faith.

15. Upon arriving in the custody of ODRC, Plaintiff affiliated himself with and studied teaching materials from the SNS faith.

16. Plaintiff observes the beliefs and practices taught by the SNS faith, including the keeping of Sabbath from sundown on Friday to sunset on Saturday, keeping the Holy Days and Feasts as described in the Old Testament of the Holy Bible, use of the sacred names of Yahweh and Yahshua, and keeping the Old Testament dietary (i.e. Kosher) laws regarding clean and unclean foods.

## RELIGIOUS WORK PROSCRIPTION REQUESTS

17. On or about October 6th, 2019, Mr. Miller submitted a religious accommodation request form to AOCI.

18. Said request form asked that Plaintiff be excused from work and school on the Seventh Day Sabbath and Seven Annual Holy Days.

19. Shortly thereafter, AOCI informed Plaintiff that he must submit two separate request forms – one for requesting off of work/school on the Seventh Day Sabbath and one for requesting off of work/school for the Seventh Holy Day Sabbath.

20. Accordingly, on or about December 3rd, 2019, Mr. Miller sent correspondence to Defendant ENGLE with the two required religious accommodation requests attached.

21. On or about December 1st, 2019, Plaintiff attempted to personally hand deliver the request forms directly to Defendant ENGLE.

22. Defendant ENGLE refused to accept this hand delivery.

23. After not receiving a response, Plaintiff filed an informal complaint on or about December 12th, 2019.

24. On or about January 1st, 2020, Plaintiff sent correspondence to Defendant ENGLE requesting that he be added to the list of inmates that observe Passover.

25. Defendant ENGLE responded saying that they were not accepting sign-ups for Passover observance at that time.

26. Defendant ENGLE further responded saying that he did not recall seeing the accommodation requests made on or about December 3rd, 2020.

27. In response, Plaintiff once again submitted the two separate request forms on or about January 7th, 2020.

28. On January 7th, 2020, Plaintiff hand delivered the correspondence mentioned in this Paragraph 27 of this complaint to Chaplain ANDERSON by hand and notified Defendant ENGLE of this by "kite."

29. Plaintiff subsequently hand delivered a letter to Deputy Warden of Special Services Cori Smith informing her of his continual requests and seeking assistance with the matter.

30. Deputy Warden of Special Services Cori Smith ignored this plea for assistance.

31. On or about March 4th, 2020, Plaintiff wrote a complaint addressing his concerns about not receiving approvals for Holy Day accommodations.

32. While Mr. Miller was ultimately granted Passover/Unleavened Bread accommodations for 2020, he has not been afforded similar accommodations for the Seven Holy Days consistent with his Holy calendar.

33. On or about January 14th, 2021, Plaintiff received from AOCI the "2021 ODRC Holiday Observance with Meal Accommodations" calendar.

34. This calendar only provided for six Holy Days and Passover – but a Seventh Holy Day, the Feast of Weeks, was entirely omitted.

35. The SNS faith requires Plaintiff to keep the Holy Day of the Feast of Weeks.

36. Further, while many of the dates of the Holy Days were correct, the tenets of the SNS faith require that the observance of the Holy Days begin at sundown on the first day, and therefore the subsequent day is when the work and school proscription applies.

37. On or about February 10th, 2021, a representative of Mr. Miller wrote a letter demanding said accommodations to counsel for the ODRC.

38. To date, no such accommodations have been made for the observance of Plaintiff's religion.

## KOSHER MEAL ACCOMODATION REQUESTS

39. On or about October 28th, 2019, Plaintiff submitted a religious accommodation request for a kosher food diet.

40. On or about December 13th, 2019, plaintiff received a response stating that his request was denied.

41. The Plaintiff appealed that decision denying him kosher meal accommodations.

42. On or about February 7th, 2020 Plaintiff received a response informing him that the appeal was denied.

43. Despite the Plaintiffs repeated requests for kosher meals in conjunction with his sincerely held religious beliefs, Plaintiffs religious diet has not been accommodated.

44. As a result of the Defendants failure to provide the plaintiff with reasonable dietary accommodations in line with his religious beliefs, the plaintiff has been forced to purchase necessary food from Commissary at great expense to him.

45. Moreover, inmates within AOCI that do keep a Kosher diet (including SNS members) are required to wear religious iconography to identify their religious affiliation – including a requirement that the inmate wear a "Star of David" – in order to obtain Kosher meals.

## RELIGIOUS SERVICES REQUESTS

46. On or about August 14, 2019, the Plaintiff met with Defendant ENGLE and inquired about the availability of video-based SNS services for the Sabbath.

47. Defendant ENGLE denied said accommodation request.

48. Defendant ENGLE claimed that making said accommodation would be too time consuming to screen.

49. After this denial, Plaintiff requested that the Chapel be made available for he and another practicing inmate to observe their SNS religious rites and traditions.

50. Defendant ENGLE similarly refused this request.

51. The Plaintiff then filed an informal complaint on or about August 27th, 2019 concerning this refusal.

52. This complaint was escalated to a grievance which was denied by Allison Gibson.

53. This denial was appealed, and the denial was ultimately affirmed by Kelly Riehle.

54. On or about August 22nd, 2019, the Plaintiff submitted a DRC4326 form requesting services for his faith.

55. At the same time, four additional inmates also completed the DRC4326 form similarly requesting SNS services and accommodations, thus meeting the facilities requirements.

56. Each DRC4326 form was submitted to Defendant ENGLE – but Plaintiff never received any response.

57. On or about November 24th, 2019, Plaintiff submitted an informal complaint regarding the lack of response to his request.

58. Deputy Warden of Special Services Cori Smith informed the plaintiff that his request was still pending.

59. She further explained that there were not five offenders listed as part of the SNS faith who requested these services.

60. However, documentation obtained from the facility shows that at the time in which this request was made there were well over five offenders listed as part of the SNS Faith.

61. The Plaintiff then escalated his complaint to a grievance.

62. The response to that grievance likewise focused on the issue of not having the requisite number of members of the SNS Faith – despite evidence in the possession of AOCI to the contrary.

63. In said response, Inspector Schnipke informed the Plaintiff that the ODRC religious accommodation policy requires at least five members of a particular faith to engage in congregate services.

64. The Plaintiff then escalated the grievance to an appeal, and on or about January 9th, 2020, Assistant Chief Inspector Kelly Riehle informed him that the decision denying the grievance had been affirmed.

65. On or about February 10, 2020, Plaintiff – along with five others inmates who identified with the SNS faith – again submitted DRC4326 forms requesting services for their faith.

66. On or about February 26th, 2020, Plaintiff wrote an informal complaint regarding the lack of response to these request forms.

67. This informal complaint was granted.

68. On or about June 24th, 2020, the requests for services were denied.

69. Plaintiff then filed an appeal on or about June 29th, 2020.

70. This appeal was denied on or about September 21st, 2020.

71. Thus, the Plaintiff has been denied religious accommodations to congregate with members of his faith or otherwise listen to or view recorded SNS worship services.

**PLAINTIFF HAS SUFFERED – AND CONTINUES TO SUFFER – HARM FROM THE DENIAL OF HIS REASONABLE RELIGIOUS ACCOMODATION REQUESTS**

72. Due to the Defendants' denial of his religious accommodation requests, Plaintiff is and will be compelled to work on Feasts and Holy Days in violation of his religious beliefs and his conscience.

73. If Plaintiff refuses to work on a feast or Holiday, he can receive a conduct report or other derogatory mark on his inmate record. If this happens, he can be disciplined by receiving extra duty, being placed in disciplinary segregation or having his security level increased and his privileges decreased.

74. By denying Plaintiff the right to eat kosher food, Plaintiff has suffered, and is suffering, irreparable harm due to his inability to freely exercise his religion. Furthermore, Plaintiff, in attempting to keep a kosher diet, has been forced to suffer financial loss, in order to buy Kosher food in the commissary that members of other religious faiths get for free.

75. By denying the Plaintiff the right to observe holidays and the right to review audio and video tapes of SNS religious services, Plaintiff is suffering harm to his religious freedom to practice his SNS faith without a rational basis.

**COUNT ONE: CLAIM UNDER THE RELIGIOUS LAND USE AND INSTITUIONALIZED PERSONS ACT ("RLUIPA"), 42 U.S.C §2000CC-2000CC-5**

76. The Plaintiff hereby incorporates by reference all of the facts and allegations outlined above as if fully restated herein.

77. Defendants treatment and denial of Plaintiff's repeated requests for religious accommodations based on his sincerely held religious belief constitutes the imposition or

implementation of a land use regulation that imposes a substantial burden on Plaintiff's religious exercise.

78. This burden is not in the furtherance of a compelling government interest and/or is not the least restrictive means of furthering said interest – in violation of RLUIPA, 42 U.S.C. §2000cc(a)(1).

79. Further, the Defendants treatment of Plaintiff and other SNS inmates requests for religious accommodations differently than those of other religions on the basis of Plaintiff's identification with the SNS religion constitutes unlawful religious discrimination in violation of RLUIPA, 42 U.S.C. §2000cc(b)(2).

**COUNT TWO: VIOLATION OF THE RIGHT TO FREE EXERCISE OF RELIGION UNDER THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION**

80. The Plaintiff hereby incorporates by reference all of the facts and allegations outlined above as if fully restated herein.

81. At all times relevant to the claims herein, the Defendants were acting under Color of Law.

82. Defendants' denial selectively impacts SNS members, was intentionally discriminatory and is not of neutral or general application.

83. Defendants' denial of Plaintiff's religious accommodation requests under the color of State law - and particularly Defendants' denial of kosher meals, denial of accommodations for Sabbath and Holy Days, the denial of access to worship videos and tapes, and the denial of the right to freely associate with members of his faith in religious study and worship – constitutes ongoing and irreparable harm in violation of Plaintiff's right to the free exercise of religion as guaranteed by the First Amendment to the United States Constitution.

## COUNT THREE: VIOLATION OF THE RIGHT TO FREEDOM OF CONSCIENCE UNDER ARTICLE 1, SECTION 7 OF THE CONSTITUTION OF THE STATE OF OHIO

84. The Plaintiff hereby incorporates by reference all of the facts and allegations outlined above as if fully restated herein.

85. The Plaintiff's religious beliefs are sincerely held.

86. The Defendant's governmental enactments have a coercive affect against the Plaintiff in the practice of his religion.

87. At all times relevant to the claims herein, the Defendants were acting under Color of Law.

88. Defendants' denial of Plaintiff's religious accommodation requests under the color of State law - and particularly Defendants' denial of kosher meals, denial of accommodations for Sabbath and Holy Days, the denial of access to worship videos and tapes, and the denial of the right to freely associate with members of his faith in religious study and worship – constitutes an ongoing and irreparable harm to Plaintiff's right to freedom of conscience guaranteed by Article 1, Section 7 of the Ohio Constitution.

89. Defendants have no compelling interest in denying the Plaintiff any of the accommodations he has requested.

## COUNT FOUR: VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

90. The Plaintiff hereby incorporates by reference all of the facts and allegations outlined above as if fully restated herein.

91. At all times relevant to the claims herein, the Defendants were acting under Color of Law.

92. By granting kosher meals, congregate services, chapel space and time and work proscriptions to other religions – including members of the Jewish faith – while denying the same to members of the SNS faith solely on the basis of where these religious groups are placed in administratively-created and managed religious classifications (or "catchment areas"), Defendants have intentionally violated Plaintiff's right to equal protection guaranteed by the 14th Amendment to the United States Constitution.

93. Moreover, by requiring Kosher inmates to wear religious iconography - when other inmates or religious groups are not required to - Defendants have intentionally violated Plaintiff's right to equal protection guaranteed by the 14th Amendment to the United States Constitution.

**COUNT FIVE: VIOLATION OF THE "EQUAL PROTECTION AND BENEFIT" CLAUSE FOUND IN ARTICLE 1, SECTION 2 OF THE OHIO CONSTITUTION**

94. The Plaintiff hereby incorporates by reference all of the facts and allegations outlined above as if fully restated herein.

95. At all times relevant to the claims herein, the Defendants were acting under Color of Law.

96. By granting kosher meals, congregate services, chapel space and time and work proscriptions to other religions – including members of the Jewish faith – while denying the same to members of the SNS faith solely on the basis of where these religious groups are placed in administratively-created and managed religious classifications (or "catchment areas"), Defendants have violated Plaintiff's right to "equal protection and benefit" of law as guaranteed by Article 1, Section 2 of the Ohio Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully ask that this court entered an order that:

1. Declares that the ODRC and/or AOCI policies and practices at issue, as alleged herein, violate the Ohio Constitution, the United States Constitution and/or RLUIPA.

2. Enjoins the State of Ohio, it officers, employees, agents, successors and all other persons acting in concert or participation with it from:

    a. Imposing a substantial burden on the religious exercise of members of the SNS faith that is not narrowly tailored to furthering a compelling government interest; and
    b. Treating SNS and its members in less than equal terms with other religious assemblies or institutions, or non-religious inmates; and
    c. Discriminating against SNS and its members on the basis of religion or religious denomination.
    d. From requiring any inmate that is religiously compelled to keep a kosher diet from having to wear an identifying symbol – including but not limited to a Star of David.

3. Requires the Defendants:

    a. Take such actions as maybe necessary to restore, as nearly as practicable, SNS and its members to the position they would have been in but for the defendants unlawful conduct, including but not limited to granting such approvals as are necessary to allow for the reasonable religious accommodation sought.
    b. Take any actions as maybe necessary to prevent a recurrence of such unlawful conduct in the future, including but not limited to, instituting a formal written policy governing how and when SNS should be provided religious accommodations while under the custody and control of the Defendants.

4. Reasonable Attorney Fees for the prosecution of this action.

5. Awards compensatory damages for the necessity of Plaintiff to purchase Kosher meals at his cost in an amount anticipated to exceed $10,000.00.

6. Punitive Damages.

7. Awards such additional relief as the interest of justice may require, together with the Plaintiff's costs and disbursements in this action.

Respectfully submitted,

_/s/ Dennis Sawan_
Dennis E. Sawan (#0090289)

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of all issues triable of right by a jury.

Respectfully submitted,

_/s/ Dennis Sawan_
Dennis E. Sawan (#0090289)